IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
DELTA DIVISION

| | | |
|---|---|---|
| GABRIEL GONZALEZ | ) | |
| Reg. #30515-112 | ) | |
| | ) | |
| v. | ) | No.  2:20CV00083-BSM-JTK |
| | ) | |
| DEWAYNE HENDRIX, Warden | ) | |
| FCC Forrest City | ) | |

### RESPONSE OF DEWAYNE HENDRIX TO GABRIEL GONZALEZ'S PETITION FOR A WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241 AND MOTION TO DISMISS

Comes now Dewayne Hendrix, Warden, Forrest City Correctional Institution, by and through his attorneys, Cody Hiland, United States Attorney for the Eastern District of Arkansas, and Shannon Smith, Assistant United States Attorney for said district, and in response to Gabriel Gonzalez's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241, states that this Court should dismiss the petition for lack of jurisdiction. The United States provides Exhibits 1 through 6 in response to the Court's Order.

### I.     Factual Background

Gonzalez was charged in a superseding three-count indictment, filed September 28, 2005, with acting under color of law to deprive three women of their right to bodily integrity, in violation of 18 U.S.C. § 242. *See* Exhibit 2, United States District Court for the Central District of California (CDCA), Case No. 2:04-cr-01189, Docket Sheet, ECF No. 55. The charges stem from Gonzalez, formerly a deputy with the Los Angeles Sheriff's Department, sexually assaulting women that he encountered while on duty and while conducting routine traffic stops. A jury returned guilty verdicts on all three counts in the indictment. *See* Exhibit 2, ECF No. 100. Gonzalez was sentenced

to 360 months' imprisonment on August 3, 2006. (Exhibit 1, CDCA Case No. 2:04-cr-01189, ECF No. 117).

Gonzalez appealed, and the judgment was affirmed by the Ninth Circuit on July 18, 2008. *See* Exhibit 3, 9th Cir. Case No. 06-50461. The Ninth Circuit denied his petition for rehearing. (9th Cir. Case No. 06-50461). On November 16, 2009, he moved to vacate and set aside his conviction and sentence under 28 U.S.C. § 2255, averring that his trial counsel was ineffective and that the United States violated his constitutional rights by failing to produce information helpful to the defense. (CDCA Case No. 2:04-cr-01189, ECF No. 140). The district court denied his § 2255 motion on August 31, 2010. *See* Exhibit 4, CDCA Case No. 2:04-cr-01189, ECF No. 171.

On September 23, 2010, Gonzalez filed a motion to reconsider the order denying his § 2255 motion; the district court denied this motion. *See* Exhibit 5, CDCA Case No. 2:04-cr-01189, ECF No. 182). Gonzalez sought a certificate of appealabilty as to the denial of his § 2255 motion and as to the denial of the motion for reconsideration on December 17, 2010, but both the district court and the Ninth Circuit denied his requests for a certificate of appealability. (CDCA Case No. 2:04-cr-01189, ECF No. 185, 187). On February 15, 2018, Gonzalez filed a petition for leave to file motion pursuant to Rule 60(b), but the district court denied his petition. *See* Exhibit 6, CDCA Case No. 2:04-cr-01189, ECF No. 195.

On April 15, 2020, Gonzalez filed a motion for reduction in sentence under 18 U.S.C. § 3582 as amended by the First Step Act of 2018 and the CARES Act of 2020 in the United States District Court for the Central District of California, which is currently pending. (CDCA Case No. 2:04-cr-01189, ECF No. 202).

On April 13, 2020, Gonzalez filed the instant petition under 28 U.S.C. § 2241 seeking temporary reassignment to home-confinement due to the COVID-19 pandemic.

## II. Law and Argument

### A. The petition should be dismissed for lack of jurisdiction.

Gonzalez is an inmate at the Federal Correctional Institute in Forrest City with a projected release date of September 17, 2031. *See* https://www.bop.gov/inmateloc/ (last visited 5-21-2020). Gonzalez seeks temporary release to home confinement under § 2241 due to alleged prison conditions in light of COVID-19. However, because Gonzalez seeks relief against the conditions of his confinement, his claim is outside the proper scope of a § 2241 petition and should be dismissed.

A petition for writ of habeas corpus seeks to challenge legality of custody, or the fact or length of confinement. *Preiser v. Rodriguez*, 411 U.S. 475, 484, 491 (1973). "[C]onstitutional claims that merely challenge the conditions of a prisoner's confinement, whether the inmate seeks monetary or injunctive relief, fall outside of th[e] core" of habeas corpus. *Nelson v. Campbell*, 541 U.S. 637, 643 (2004). A habeas petition is not the proper claim to remedy an allegation as to the conditions of confinement. *Spencer v. Haynes*, 774 F.3d 467, 470 (8th Cir. 2014). If a prisoner "is not challenging the validity of his conviction or the length of his detention … then a writ of habeas corpus is not the proper remedy." *Id.* at 469 (quoting *Kruger v. Erickson*, 77 F.3d 1071, 1073 (8th Cir. 1996) (per curiam)). *See also Nettles v. Grounds*, 830 F.3d 922, 933–34 (9th Cir. 2016) (conditions-of-confinement claims, which fall outside "the core of habeas corpus," must be brought in a civil rights claim rather than in a habeas petition), *Cardona v. Bledsoe*, 681 F.3d 533, 537 (3d Cir. 2012) (same), *Davis v. Fechtel*, 150 F.3d 486, 490 (5th Cir. 1998) (same), *McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 811–12 (10th Cir. 1997) (same), *Graham v. Broglin*, 922 F.2d 379, 381 (7th Cir. 1991) (same), and *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004) (same).

"Where petitioner seeks a writ of habeas corpus and fails to attack the validity of his sentence or the length of his state custody, the district court lacks the power or subject matter jurisdiction to issue a writ." *Kruger*, 77 F.3d at 1073. A petition seeking release due to the COVID-19 pandemic challenging the conditions of confinement is not properly brought under § 2241 and should be dismissed for lack of jurisdiction. *See Bolden v. Ponce*, 2020 WL 2097751 (C.D. Cal. May 1, 2020). Any challenge to the conditions of confinement in the context of the COVID-19 pandemic, whether alleging inadequate social distancing measures, lack of physical exercise opportunities, or inability to sanitize personal belongings, is not proper under § 2241. Accordingly, a district court must dismiss such a petition for lack of jurisdiction.

In his petition, Gonzalez details the events surrounding the introduction of the COVID-19 virus into the United States and into the federal prison system, the conditions of the prison, which he argues greatly increase the likelihood of contracting the virus, and the restrictions he is experiencing as a result of the Bureau of Prisons' (BOP) efforts to limit exposure to and spread of the virus. (DCD 1). Gonzalez asserts that he suffers from gastroesophageal reflux disease, hypothyroidism, and an ocular disorder, and that if he contracted COVID-19 it would "significantly increase" the likelihood that he would die. *Id.* He argues that his sentence is being implemented under a "cruel and unusual standard" and that he is at high-risk under the prison's conditions. *Id.* Gonzalez seeks temporary reassignment to home-confinement until the COVID-19 crisis is abated. *Id.* Such a request is akin to a request a different location of confinement not cognizable in a habeas action.  Thus, it appears the defendant challenges the conditions of confinement, and the Court lacks jurisdiction. *See Vaughan v. Hendrix*, No. 219CV00046DPMJTR, 2019 WL 4412290, at *2 (E.D. Ark. Aug. 20, 2019), *report and recommendation adopted as modified,* No. 2:19-CV-46-DPM, 2019 WL 4411960 (E.D. Ark. Sept.

13, 2019) (dismissing § 2241 petition as not cognizable where defendant's complaint concerned his PSF designation, which made him ineligible for assignment to a camp facility or more desirable custody placement) (citing *Rodebaugh v. Haynes*, No. 2:13-cv-00011-DPM-BD, 2013 WL 1001436 (E.D. Ark. March 13, 2013) (dismissing, for lack of habeas corpus jurisdiction, § 2241 Petition challenging the BOP's Sex Offender PSF designation); *Butler v. Outlaw*, No. 2:08-cv-00192-JLH/JTR, 2010 WL 1417910 (E.D. Ark. April 6, 2010)).

To the extent that a petitioner seeks release to home confinement due to the COVID-19 pandemic and his purported medical conditions, his petition could be construed as a request for a compassionate release under 18 U.S.C. § 3582(c)(1)(A). *See, e.g.*, *Justice v. Sepanek*, 2013 WL 954115, at *4 (E.D. Ky. Mar. 11, 2013) (interpreting § 2241 petition seeking release in order to receive proper medical treatment as a request for compassionate release). However, § 2241 is not available as a manner to seek compassionate release; only the original sentencing court can entertain such a request. *Barrett v. Carvajal*, 2020 WL 2496920 (N.D. Ohio May 14, 2020), citing *United States v. Raia*, 954 F.3d 594, 595 (3d Cir. 2020) ("Section 3582's text requires ... motions [for compassionate release] to be addressed to the sentencing court, a point several Circuits have noted....").

On April 15, 2020, Gonzalez filed a motion for reduction in sentence under 18 USC § 3582 and the CARES Act of 2020, which is currently pending in the sentencing court, the Central District of California. (CDCA Case No. 2:04-cr-01189, ECF No. 202). In the case at bar, the district court lacks jurisdiction to order such relief in a § 2241 proceeding. Gonzalez is barred from improperly invoking § 2241 "to obtain a second bite of the apple from this Court." *Barrett*, 2020 WL 2496920 at *3.

Gonzalez also references the CARES Act in his petition. Recently, the BOP has been granted wider authority to designate inmates for home confinement in its toolkit of available measures. On March 26, 2020, the Attorney General directed the Director of the Bureau of Prisons, upon considering the totality of the circumstances concerning each inmate, to prioritize the use of statutory authority to place prisoners in home confinement. That authority includes the ability to place an inmate in home confinement during the last six months or 10% of a sentence, whichever is shorter, *see* 18 U.S.C. § 3624(c)(2), and to move to home confinement those elderly and terminally ill inmates specified in 34 U.S.C. § 60541(g). Section 12003(b)(2) of the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116-136, enacted on March 27, 2020, permits the BOP, if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau of Prisons, to "lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code, as the Director determines appropriate." To the extent Gonzalez seeks an order to home confinement from this Court pursuant to the CARES Act, the CARES Act provides the BOP with such authority, but provides no mechanism for judicial review. Therefore, the Court is without authority to grant his request.

If the Court determines that it has jurisdiction over this claim, the United States respectfully requests additional time to address the merits of the motion. The United States notes, however, that Gonzalez attempts to proceed on his claim under a standard where an official knows of and disregards an excessive risk to inmate health and safety. However, Gonzalez alleges not that the BOP disregards risk; rather, Gonzalez states that the BOP "is unable to provide safety" and that the alleged conditions remain "despite prison official's motives."

The United States further notes that in an effort to mitigate the spread of the virus in its detention facilities, the Federal Bureau of Prisons (BOP) has instituted a five-phased COVID-19 Action Plan to maintain the safety of prison staff and inmates while also fulfilling its mandate of incarcerating persons sentenced or detained based on judicial orders. *See* Federal Bureau of Prisons COVID-19 Action Plan, available at www.bop.gov/resources/news/20200313_covid-19.jsp; *see also Missourians for Fiscal Accountability v. Klahr*, 830 F.3d 789 (8th Cir. 2016) (citing *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 648 (7th Cir. 2011), for the proposition that courts have the authority to take judicial notice of government websites). The defendant has not demonstrated that the plan adopted by the BOP is inadequate to either manage the outbreak or provide treatment for inmates who fall ill. *See United States v. Gileno*, No. 3:19-CR-161-(VAB)-1, 2020 WL 1307108, at *4 (D. Conn. March 19, 2020).

- Phase 1:  In January 2020, the BOP established a task force to begin planning for potential coronavirus transmissions, and to build on its existing procedures for pandemics.
- Phase 2:  On March 13, 2020, the BOP implemented aggressive measures to prevent and mitigate the risk of COVID-19 transmission into and inside its facilities, including:
    - Screening of Inmates and Staff:  All new BOP inmates are screened for COVID-19 symptoms and risk of exposure.  Asymptomatic inmates with a documented risk of exposure will be quarantined; symptomatic inmates with documented risk of exposure will be isolated and tested pursuant to local health authority protocols.  In areas with sustained community transmission, all facility staff will be screened for self-reported risk factors and elevated temperatures. (staff registering a temperature of 100.4 degrees Fahrenheit or higher will be barred from the facility).

- o Quarantine Logistics: All BOP institutions establish quarantine areas within their facilities to house any inmates found to be infected with or at heightened risk of being infected with coronavirus pursuant to the above-described screening protocol.

- o Suspension of Social Visits and Tours: BOP placed a 30-day hold on all social visits and tours.

- o Suspension of Legal Visits: BOP placed a 30-day hold on legal visits, with exceptions permitted on a case-by-case basis.

- o Suspension of Inmate Movements: BOP ceased the movement of inmates amongst its facilities for at least 30 days, with exceptions for medical treatment and other exigencies.

- o Modified Operations: BOP facilities modified operations in order to maximize social distancing.

- Phase III: On March 18, 2020, the BOP implemented an action plan for locations that perform administrative services to allow for maximizing telework. All cleaning, sanitation, and medical supplies were inventoried. Ample supplies were determined to be on hand and ready to be distributed or moved to any facility as deemed necessary. The BOP placed additional orders for supplies, in case of a protracted event.

*See* https://www.bop.gov/resources/news/pdfs/20200324_bop_press_release_covid19_update.pdf (pertaining to phases I-III).

- Phase IV: On March 26, 2020, the BOP implemented revised preventative measures for all institutions. The agency updated its quarantine and isolation procedures to require all newly admitted inmates to BOP, whether in a sustained community transition area or not,

be assessed using a screening tool and temperature check. This includes all new intakes, detainees, commitments, writ returns from judicial proceedings, and parole violators, regardless of their method of arrival. Asymptomatic inmates are placed in quarantine for a minimum of 14 days or until cleared by medical staff. Symptomatic inmates are placed in isolation until they test negative for COVID-19 or are cleared by medical staff as meeting CDC criteria for release from isolation.

- Phase V: On April 1, 2020, in response to a growing number of quarantine and isolation cases, the BOP directed the following actions be taken immediately to further mitigate the exposure and spread of COVID-19:
  - For a 14-day period, inmates in every institution be secured in their cells/quarters to decrease the spread of the virus.
  - During this time, to the extent practicable, inmates should still have access to programs and services that are offered under normal operating procedures, such as mental health treatment and education.
  - The BOP is to coordinate with the United States Marshals Service to significantly decrease incoming movement during this time.
  - After 14 days, this decision will be reevaluated.
  - Limited group gathering will be afforded to the extent practical to facilitate, commissary, laundry, showers, telephone, and Trust Fund Limited Inmate Computer System (TRULINCS) access.

*See* https://www.bop.gov/resources/news/20200331_covid19_action_plan_5.jsp (phases IV-V). Further details regarding the BOP's COVID-19 action plan and efforts are available at https://www.bop.gov/resources/news/20200313_covid-19.jsp and https://www.bop.gov/

coronavirus/index.jsp. Therefore, Gonzalez cannot demonstrate disregard of an excessive risk to inmate health and safety

WHEREFORE, for the foregoing reasons, the United States respectfully requests that Gonzalez's petition be dismissed, and if the Court determines it has jurisdiction over this claim, for additional time to respond to the merits.

    Respectfully submitted,

    CODY HILAND,
    United States Attorney

By: SHANNON S. SMITH
    Bar No. 94172
    Assistant U.S. Attorney
    P.O. Box 1229
    Little Rock, AR 72203
    (501) 340-2600
    shannon.smith@usdoj.gov

## CERTIFICATE OF SERVICE

      I hereby certify that on May 28, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system. I further certify that on said date, I sent by U.S. Mail a copy of this filing to:

GABRIEL GONZALEZ
#30515-112
FORREST CITY - LOW
FEDERAL CORRECTIONAL INSTITUTION
Inmate Mail/Parcels
P.O. Box 9000
FORREST CITY, AR 72336

                                            By: SHANNON SMITH
                                                  Bar No. 94172
                                                  Assistant U.S. Attorneys
                                                  P.O. Box 1229
                                                  Little Rock, AR 72203
                                                  (501) 340-2600
                                                  shannon.smith@usdoj.gov