FILED
CLERK, U.S. DISTRICT COURT

AUG 3 1 2010

CENTRAL DISTRICT OF CALIFORNIA
BY                              DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| UNITED STATES OF AMERICA, | Case No. CV 09-8408 CAS |
| --- | --- |
| Plaintiff-Respondent, | CR 04-1189 CAS |
| vs. | ORDER DENYING PETITIONER'S MOTION TO VACATE, SET ASIDE, OR CORRECT CONVICTION AND SENTENCE PURSUANT TO 28 U.S.C. § 2255 |
| GABRIEL GONZALEZ, | |
| Defendant-Petitioner. | |

## I. INTRODUCTION

On August 3, 2006, petitioner Gabriel Gonzalez was sentenced to 360-months in prison and a five-year term of supervised release for violating 18 U.S.C. § 242 (deprivation of rights under color of law).

Petitioner appealed from the judgment of the conviction to the Ninth Circuit and the judgment was affirmed on July 18, 2008.

On November 16, 2009, petitioner filed the instant motion pursuant to 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence claiming discovery violations and ineffective assistance of counsel. The government filed its opposition on May 18,

Exhibit 4

2010. A reply was filed on July 19, 2010. Petitioner's motion is presently before the Court.

## II. FACTUAL BACKGROUND

In affirming the jury verdict below, the Ninth Circuit stated as follows:

> According to Cecilia Tirado, the owner of a beauty shop, she was driving home alone on the Imperial Highway after having been dancing at Alpine Village. The date was a Sunday in July or August 2002. The time was early morning. She was pulled over by someone in a patrol car dressed as a policeman and carrying a gun.
>
> The officer performed sobriety tests on her, then ordered her into the patrol car. He drove her by her home in the City of Southgate but passed the house without letting her out. While driving, he asked her whether she had a husband or boyfriend. After a long drive, the officer drove into a desolate parking lot, commanded her to undress and penetrated her vagina. He then drove her back to her car and left her.
>
> According to Pamela, a prostitute, she was walking in the center of Long Beach Boulevard late at night on January 8, 2003 when a black and white police car, marked "Sheriff," stopped her, and the officer asked her for identification, then asked her to get into the car. He drove around and stopped in a nearby alley, examined her genital area and displayed his own sexual organ. He requested her to engage in oral sex, and she complied. He eventually let her go.
>
> According to Kussy Guzman, a native of Peru, she was driving home

2

alone from her work as a shift leader at Jack-In-The-box at about 2:00 a.m. in the last days of 2002. She was pulled over by a police officer, who questioned her and eventually told her to sit on the street. The officer asked her whether she had a mother, a sister, or a boyfriend. Purportedly in search of a weapon or drugs, he touched her hips, waist and breasts. He then let her go.

According to Shirley Munoz, an assembler at a manufacturing plant, she was driving alone to her hotel in the early morning hours of November 16, 2001. She was pulled over by a sheriff's deputy. She admitted to him that she was on parole. He examined her, made her partially undress, and put his hand on her breasts. The officer twice told her that she was pretty, and asked if she was married before eventually releasing her.

According to Elizabeth Castillo-Chavez, a married resident of Compton, she was pulled over by a Compton Sheriff's deputy on her way to work at about 5:00 a.m., near the end of December 2001. The officer ordered her into the back of his police car where he placed himself next to her and asked her personal questions. He told her to get out of the car and searched her, rubbing his palms on her thighs, hips and breasts.

The principal issue at trial was the identity of the perpetrator. The process of identification began when Fields, the night she escaped from the officer, encountered her husband Rory Fitzhugh, against whom she had a restraining order. A police car noticed them, and she told the officers of her recent ordeal. She furnished the number of the

3

patrol car of the officer who had tormented her and also the license place she had memorized-respectively 050 or 650 and 300795 or 000795. An investigator learned that 050 was on the roof of a sheriff's vehicle used by two deputies on the day shift on January 8 and not used that night. The number on the defendant's patrol car was 560. The license plate on his car was E1007975.

Despite these discrepancies, the investigation continued. The investigator brought a "photo-six-pack" (a group of six similar-looking persons) and showed it to Fields the day after her ordeal. She identified the defendant as the perpetrator. The investigator then had an examination made of the patrol car used by the defendant on the night of January 8. A fingerprint matching Fields' was found on the trunk of the car.

The investigation of the Fields case interacted with the Tirado case, when in January 2003 Tirado responded to a telephone survey by the Southgate police asking about citizen satisfaction with police activities. She told her story, and a Southgate police officer called on her at home to confirm it, later notifying the Los Angeles Sheriff's internal complain bureau. An investigator there spoke to the investigator of the Fields case.

Tirado had identified the perpetrator as a Southgate police officer. But on February 19, 2003, when Tirado was shown a photo-six-pack she was visibly upset and at once identified the defendant as the perpetrator. She also showed investigators where she'd been pulled over on the night of the attack; it was an area patrolled by the Los

4

Angeles Sheriff's Department.

The FBI, alerted by the investigators, searched the records of the defendant's onboard computer. The names of Guzman, Munoz, and Chavez turned up. The FBI sent letters to each of the three women asking if they had encountered "a police officer" whose conduct had been improper. This inquiry led each of the women to report the incidents set out above. Guzman then identified the defendant from an FBI photo-six-pack.

United States v. Gonzalez, 533 F.3d 1057, 1059-1060 (9th Cir. 2008).

## III. LEGAL STANDARD

A petition pursuant to 28 U.S.C. § 2255 challenges a federal conviction and/or sentence to confinement where a prisoner claims "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." Sanders v. United States, 373 U.S. 1, 2 (1963).

## IV. DISCUSSION

Respondent argues that petitioner has procedurally defaulted on petitioner's claims by failing to raise them at trial or on direct appeal. Opp'n at 10.

Courts generally apply a procedural default rule barring § 2255 relief on claims that the movant could have, but did not raise, on appeal. Reed v. Farley, 512 U.S. 339, 354 (1994). "Where a defendant has procedurally defaulted on a claim by failing to raise it on direct review, the claim may be raised on petition for habeas relief only if the defendant can first demonstrate either 'cause' and actual 'prejudice' or that he is 'actually innocent.'" United States v. Braswell, 501 F.3d 1147, 1149 (9th Cir. 2007).

### A. Petitioner's Claim for Discovery Violations

Petitioner claims that he was deprived of a fair trial because the government

5

failed to disclose an alleged prosecutorial leniency towards witness Pamela Fields ("Fields"). Mot. at 9. Petitioner contends that Fields received favorable treatment from law enforcement during her involvement in other criminal matters, and that the government failed to produce evidence of such leniency. Mot. at 8-11. This claim was not raised on appeal.

In the present case, the Court finds that petitioner has failed to show "cause" excusing the procedural default, and as such, finds that petitioner's first claim for relief lacks merit. Since the Court finds that petitioner fails to show "cause," the Court does not reach the questions of whether there was "actual prejudice." See McCleskey v. Zant, 499 U.S. 467, 502 (1991) (the Court was not required to consider whether there was "actual prejudice" since the Court found that there was no "cause" excusing procedural default). Accordingly, the Court denies petitioner's first claim for relief.

**B.     Petitioner's Claims for Ineffective Assistance of Counsel**

Claims for ineffective assistance of counsel may not be the subject of a procedural default. Massaro v. United States, 538 U.S. 500, 504 (2003) (holding that "an ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal").

Ineffective assistance of counsel constitutes a violation of the Sixth Amendment right to counsel, and thus, if established, is grounds for relief under § 2255. To establish ineffective assistance of counsel, a petitioner must prove by a preponderance of the evidence: (1) the assistance provided by counsel fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 688, 694 (1984). A claim of ineffective assistance of counsel fails if either prong of the test is not satisfied and petitioner has the burden of establishing both prongs. Id. at 697; United States v. Quintero-Barraza, 78 F.3d 1344, 1348 (9th Cir. 1995).

With respect to the first prong, the court's review of the reasonableness of counsel's performance is "highly deferential," and there is a "strong presumption" that counsel exercised reasonable professional judgment. Id. The petitioner must "surmount the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id.

After establishing an error by counsel and thus satisfying the first prong, a petitioner must satisfy the second prong by demonstrating that his counsel's error rendered the result unreliable or the trial fundamentally unfair. Lockhart v. Fretwell, 506 U.S. 364, 372 (1993). A petitioner must show that there is a reasonable probability that, but for his counsel's error, the result of the proceeding would have been different. Strickland, 466 U.S. at 694. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. Id.

The Court need not necessarily determine whether petitioner has satisfied the first prong before considering the second. The Supreme Court has held that "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed." Id. at 670. Indeed, a petitioner's failure to allege the kind of prejudice necessary to satisfy the second prong is sufficient by itself to justify a denial of a petitioner's § 2255 motion without hearing. Hill v. Lockhart, 474 U.S. 52, 60 (1985).

Under Strickland, "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Strickland, 466 U.S. at 691. The investigation should allow counsel to make an informed decision on how best to represent his or her clients. See Rios v. Rocha, 299 F.3d 796, 805 (9th Cir. 2002). "The failure to investigate is especially egregious when a defense attorney fails to consider potentially exculpatory evidence." Id. (citing Lord v. Wood, 184 F.3d 1083, 1093 (9th Cir. 1999) ("A lawyer

who fails to adequately investigate, and to introduce into evidence, [information] that demonstrate[s] his client's factual innocence, or that raise[s] sufficient doubt as to that question to undermine confidence in the verdict, renders deficient performance.")). Whether or not prejudice results from the failure to investigate "must be considered in light of the strength of the government's case." Rios, 299 F.3d at 809 (citation omitted).

Petitioner claims that his trial counsel provided ineffective assistance by (1) failing to investigate pending criminal charges against witnesses Fields and Roy Fitzhugh for impeachment purposes; (2) failing to investigate and present favorable argument using evidence from video surveillance depicting the law enforcement vehicle where the alleged assault occurred; (3) failing to investigate and present favorable argument pertaining to video surveillance at the Lynwood County Sheriff's Office; (4) failing to present expert testimony regarding reliability of eyewitnesses' identification; (5) failing to present evidence that petitioner wore a prominent mustache and eyeglasses during the months of the alleged assaults; (6) failing to investigate and present evidence that petitioner could not have been the "perpetrator" because Cecilia Tirado, a witness for the government, testified that there was a very bright moonlight at the time of the offense; and (7) failing to move to exclude evidence of Tirado's photo identification and in-court identification because of an allegedly suggestive photo spread; and (8) failing to investigate Tirado's credibility. Mot. at 12-29. Each of these claims are taken in turn.

### 1. Failure to Investigate Pending Criminal Charges Against Fields and Fitzhugh for Impeachment Purposes

First, petitioner claims he was denied effective assistance because his trial counsel failed to investigate Fields and Rory Fitzhugh ("Fitzhugh") for impeachment purposes. Mot. at 13. Petitioner asserts that both Fields and Fitzhugh had a criminal history and thus, both had "a very strong motive" to fabricate an accusation of sexual assault. Mot. at 13.

8

Petitioner's trial counsel states in her declaration that she performed a full background check on both Fields and Fitzhugh. Decl. of Vicky Podberesky "Podberesky Decl." ¶ 5. Petitioner's trial counsel further states that her co-counsel attempted to impeach Fields on cross-examination with her criminal history and the Court sustained the government's objection after determining that trial counsel's line of questioning was not relevant. Podberesky Decl. ¶ 5.

The Court concludes that petitioner fails to demonstrate prejudice from any alleged shortcoming of his trial counsel. Petitioner fails to show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. See Strickland, 466 U.S. at 694 (holding that ineffective assistance of counsel requires a showing of prejudice, which "is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different"). Accordingly, the Court denies petitioner's first ineffective assistance claim.

### 2. Failure to Investigate and Present Favorable Argument Pertaining to Video Surveillance

Second, petitioner claims he received ineffective assistance because his trial counsel failed to investigate and present favorable arguments using evidence of video surveillance that did not depict any persons entering or leaving a parked law enforcement vehicle where the assault allegedly occurred. Mot. at 14. Petitioner contends that the depiction from video surveillance is "incompatible with Fields' testimony that the perpetrator stood outside the vehicle with a police flashlight and shined it on [Fields'] person." Mot. at 14. Petitioner argues that his trial counsel failed to use the evidence to demonstrate that petitioner was not involved any sexual assault of Fields. Mot. at 16.

Petitioner's trial counsel states in her declaration that she reviewed the surveillance video and argued the inconsistencies with Fields' testimony as part of her

strategy to "demonstrate that [petitioner] was not the assailant."[1] Podberesky Decl. ¶ 6. Petitioner's trial counsel states that she also "uncover[ed] facts that corroborated Ms. Field's version of the events, and uncovered no exculpatory information." Podberesky Decl. ¶¶ 6, 8(d). Petitioner's trial counsel states her belief that the video surveillance evidence, particularly "a demonstration concerning the visibility of a flashlight" failed to add any value or strength to the argument that the surveillance was "inconsistent with Fields' description of the event." Podberesky Decl. ¶ 6.

The Court finds that petitioner fails to overcome the presumption that trial counsel's decision not to investigate further or present evidence of video surveillance "might be considered sound trial strategy." See Strickland, 466 U.S. at 688. Moreover, assuming that trial counsel's decision not to investigate further or present evidence of video surveillance was objectively unreasonable, petitioner fails to establish in light of the overwhelming evidence of his guilt that the result of the trial would have been different. See id. at 694. Accordingly, the Court denies petitioner's second ineffective assistance claim.

### 3. Failure to Investigate and Present Evidence that Petitioner was Seen on Lynwood Sheriff's Video Surveillance

Third, petitioner claims that he did not receive effective assistance because his trial counsel failed to investigate and present exculpatory evidence that petitioner was at the Lynwood Sheriff's Office during the time of the alleged assault on Fields. Mot. at 16-17.

---

[1] Petitioner's trial counsel states that she argued the following consistencies to the jury: (1) that the surveillance shows that a law enforcement vehicle entered the alley where the alleged assault of Fields occurred at a time when petitioner was "at a call with another deputy"; (2) that the second time a law enforcement vehicle was seen in the alley was at a time different than reported by Fields; and (3) that Fields testified that the alleged assault took place at the back of the vehicle and the surveillance "does not show anyone exiting the vehicle or anyone at the back of the patrol car, or walking in front of the headlights." Podberesky Decl. ¶ 6.

Petitioner's trial counsel states in her declaration that she investigated the video surveillance of the Lynwood County Sheriff's Office and petitioner's whereabouts during the time of the alleged assault. Podberesky Decl. ¶ 7. Petitioner's trial counsel states that she decided not to present the video surveillance to the jury because she believed the time on the video surveillance was inaccurate, and that it was her strategy "to focus on other inconsistencies that might demonstrate that [petitioner] was not the assailant." Podberesky Decl. ¶¶ 7, 8.

The Court concludes that petitioner has not overcome the presumption that his counsel's strategy in choosing not to present the evidence of video surveillance at the Lynwood Sheriff's Office was reasonable. See Strickland, 466 U.S. at 688.

The Court further concludes that petitioner fails to demonstrate that trial counsel's allegedly deficient performance prejudiced petitioner to the degree that there is a reasonable probability that, but for the alleged errors, the result of trial would have been different. See id. at 694.

### 4. Failure to Present Expert Testimony Regarding the Reliability of Eyewitness Identification

Fourth, petitioner claims that his trial counsel provided ineffective assistance by failing to present expert testimony that the identifications of petitioner made by three eyewitnesses Fields, Tirado, and Kussy Guzman were unreliable. Mot. at 24-26.

Petitioner's trial counsel states that she made a strategic decision not to contest the reliability of the identifications of petitioner by these witnesses. Podberesky Decl. ¶ 9. Petitioner's trial counsel states her belief that expert testimony regarding the witnesses' identification of petitioner would fail to "advance any viable defense theory" and would be neither necessary nor beneficial to the petitioner.[2] Podberesky Decl. ¶ 9.

---

[2] Petitioner's trial counsel states that her decision not to call an expert to testify regarding Tirado was based on her belief that "Ms. Tirado gave an initial physical description of her assailant that substantially differed from that of [petitioner]" even
(continued...)

11

Trial counsel's decision not to call an expert to testify to witness identification was well within the scope of reasonable professional assistance. See Strickland, 466 U.S. at 689. Petitioner's claim fails to demonstrate deficient performance and that the results of trial would have been different but for counsel's alleged errors. See id. at 694. Accordingly, petitioner's third ineffective assistance claim on this basis does not warrant federal habeas relief.

### 5. Failure to Present Evidence that Petitioner Wore a Mustache and Eyeglasses During the Time of the Alleged Assault

Fifth, petitioner claims that his trial counsel was ineffective for failing to present evidence that tended to detract from eyewitnesses' identifications of petitioner. Mot. at 23-24. Petitioner argues that trial counsel failed to present evidence that petitioner wore a mustache and eyeglasses during the time of the alleged assaults to show that the eyewitnesses' descriptions of petitioner did not match the evidence. Mot. at 27-28.

Petitioner's trial counsel states that after thorough investigation of petitioner's alleged appearance, she found that there was insufficient evidence to present to the jury that petitioner had facial hair or wore glasses during the time of the alleged assaults. Podberesky Decl. ¶ 11.

The Court finds that petitioner's disagreement with trial counsel's tactical

---

²(...continued)
though it was trial counsel's belief that Tirado's "initial eyewitness account was the correct one" and that "calling an expert to say that eyewitness['] recollections are unreliable would negate this defense." Podberesky Decl. ¶ 9(b). Petitioner's trial counsel states that her decision not to call an expert to testify regarding Guzman "would not have helped" petitioner's case because petitioner's Mobile Data Terminal records "shows that he had an actual encounter with Guzman" and the defense theory was that "[petitioner's] search of Ms. Guzman was legal and appropriate", not that Guzman misidentified petitioner. Podberesky Decl. ¶ 9(c). Petitioner's trial counsel states that with respect to Fields, trial counsel believed that it would be difficult "to argue that an actual encounter did not take place, since [Fields'] fingerprint was found on the trunk of [petitioner's] patrol vehicle, and the records demonstrated that the vehicle had been cleaned prior to [petitioner's] using it. . . ." Podberesky Decl. ¶ 9(d).

12

decision not to present evidence that petitioner wore a mustache and eyeglasses does not provide a valid basis for finding that the representation was constitutionally deficient. See Raley v. Ylst, 470 F.3d 792, 799 (9th Cir. 2006); Strickland, 466 U.S. at 690 (strategic choices made after a thorough investigation of law and facts relevant to plausible options by trial counsel "are virtually unchallengeable"). Even assuming that trial counsel's decision not to present the evidence was objectively unreasonable, petitioner fails to establish that the result of the trial would have been different. See id. at 694.

### 6. Failure to Investigate and Present Evidence of Trial Counsel's Investigation of Tirado's Testimony

Sixth, petitioner claims that he was denied effective assistance because his trial counsel failed to investigate and present evidence from Tirado's testimony that there was a bright moonlight on the night of the assault. Mot. at 20-22. Petitioner contends that trial counsel failed to show that petitioner could not have been the perpetrator because there were no nights that had bright moonlight during the time petitioner was on duty. Mot. at 22.

Petitioner's trial counsel states that she investigated the issue of whether there was moonlight on the night of the assault of Tirado, but was "hampered in the investigation due to the fact that [Tirado] did not have a precise date on which the assault occurred." Podberesky Decl. ¶ 10. Petitioner's trial counsel states that she made a tactical decision not to present the evidence because it "detract[ed]" from Tirado's initial eyewitness identification of a Southgate police officer as the assailant which trial counsel believed to be reliable. Podberesky Decl. ¶ 10. Petitioner's trial counsel states that she believed Tirado's initial eyewitness identification excluded petitioner as the assailant based on Tirado's description of someone with different features than those of petitioner. Podberesky Decl. ¶ 10. Petitioner's trial counsel states that it was her professional opinion that "it was more beneficial to the defense to concede bright moonlight occurred, to assist in the theory that [Tirado's] original

13

identification was bolstered by her ability to see clearly." Podberesky Decl. ¶ 10.

The Court finds that petitioner's disagreement with trial counsel's tactical decision not to present Tirado's testimony does not provide a valid basis for declaring that the representation was constitutionally deficient. See Raley v. Ylst, 470 F.3d 792, 799 (9th Cir. 2006); Strickland, 466 U.S. at 690. Even assuming that trial counsel's decision not to present evidence of Tirado's testimony was objectively unreasonable, petitioner fails to establish that the result of the trial would have been different, given the overwhelming evidence by other witnesses that petitioner committed the assaults. See id. at 687. Accordingly, the Court denies petitioner's fifth ineffective assistance claim.

### 7. Failure to Move to Exclude Evidence of Tirado's Photo-Identification and In-Court Identification

Seventh, petitioner claims that his trial counsel provided ineffective assistance for failing to move to exclude Tirado's "impermissibly suggestive photo spread" and in-court identification. Mot. at 25.

Petitioner's trial counsel states that she made a tactical decision not to move to exclude the evidence because she believed that the photo line-up was not impermissibly suggestive and that litigation on this issue would not have been successful. Podberesky Decl. ¶ 12.

The Court concludes that petitioner fails to demonstrate that trial counsel's allegedly deficient performance prejudiced petitioner to the degree that there is a reasonable probability that, but for the alleged errors, the result of trial would have been different. See Strickland, 466 U.S. at 694. The Court concludes that petitioner's trial counsel did not provide ineffective assistance.

### 8. Failure to Sufficiently Investigate Tirado's Credibility

Eighth, petitioner claims that he received ineffective assistance because his trial counsel failed to fully investigate Tirado's credibility. Mot. at 26-27. Petitioner contends that his counsel failed to learn that Tirado is a "liar" and that the sex between

14

1. petitioner and Tirado was "consensual." Mot. at 26-27.

2. Petitioner's trial counsel states that she conducted background checks on all witnesses, including Tirado, and that she failed to find any evidence showing that the sex between petitioner and Tirado was consensual. Podberesky Decl. ¶ 13. The government argues that it was trial counsel's professional assessment not to present inculpatory evidence sex between petitioner and Tirado. Podberesky Decl. ¶ 13.

The Court concludes that petitioner fails to demonstrate that trial counsel's allegedly deficient performance prejudiced petitioner to the degree that there is a reasonable probability that, but for the alleged errors, the result of trial would have been different. See Strickland, 466 U.S. at 694.

## V. CONCLUSION

In light of the foregoing, the Court hereby DENIES petitioner's motion for habeas corpus relief.

IT IS SO ORDERED.

Dated: August 31, 2010

_____
CHRISTINA A. SNYDER
UNITED STATES DISTRICT JUDGE