## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## DELTA DIVISION

**GABRIEL GONZALEZ**                                                    **PETITIONER**
*Reg. #30515-112*

**V.**                              **CASE NO. 2:20-CV-00083-BSM-JTK**

**JOHN P. YATES,**
*Warden, Forrest City FCC*                                          **RESPONDENT**

### PROPOSED FINDINGS AND RECOMMENDATIONS

### INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge Brian Miller. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1.      Why the record made before the Magistrate Judge is inadequate.

2.      Why the evidence proffered at the hearing before the District Judge (if such

         a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3.      The detail of any testimony desired to be introduced at the hearing before

the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court

Eastern District of Arkansas

600 West Capitol Avenue, Suite A149

Little Rock, AR 72201-3325

## I.     Introduction

Petitioner Gabriel Gonzalez is an inmate at Forrest City FCC Low Unit ("FC-Low"). He is serving a 360-month sentence following a conviction for using his position as a law enforcement officer to coerce female victims into engaging in non-consensual, sexual acts in violation of 18 U.S.C. § 242. *See Doc.* 3 at 1.[1] His projected release date is September 17, 2031. *See id.* at 3. Gonzalez already filed a motion for compassionate release in the court that sentenced him. *See USA v. Gonzalez*, 2:04-cr-1189, Doc. 202 (C.D. Cal. Apr. 15, 2020) (hereinafter "*Gonzalez I*").[2] He filed this petition pursuant to the CARES Act and 28 U.S.C. § 2241 alleging his confinement in FC-Low and its failure to protect him from the spread of COVID-19 violate his Eighth Amendment rights. *See Doc.* 1 at 3-4.  As relief, he seeks temporary release for the duration of the

---

[1] The italicized "*Doc.*" refers to the docket number entry in the Court's electronic filing system for this case. The Court will cite to the docket number entries rather than the title of each filing.
[2] The Court takes judicial notice of the docket entries and pleadings filed in *Gonzalez I*. "Doc." refers to the docket number entry in the Court's electronic filing system. The Court will cite to the docket number entries rather than the title of each filing.

pandemic or immediate release. *See Doc.* 1 at 5; *Doc.* 9 at 13.

This Court filed its proposed findings and recommended disposition on September 23, 2020. *Doc.* 10. United States District Judge Brian Miller remanded this case for reconsideration in light of new evidence in Gonzalez's objections to the recommended disposition. *Doc.* 16. In his objections, Gonzalez presented information regarding his health conditions, access to prescriptions, and treatment for COVID-19. *See Doc.* 13 at 2-20. The Court directed Yates to submit briefing on the merits of Gonzalez's claim, and it has now received supplemental briefing from both Gonzalez and Yates.

With this information in hand, the Court finds it does not have jurisdiction to grant Gonzalez home confinement under either the CARES Act or section 2241, and even assuming without deciding that Gonzalez's claim for immediate release is cognizable under section 2241, he has not presented sufficient evidence to support an Eighth Amendment claim. Therefore, it recommends his petition be dismissed with prejudice.

## II.    Background

The Court discussed Gonzalez's compassionate release motion in the Central District of California and his petition here in its previous Proposed Findings and Recommended Disposition, *see Doc.* 10 at 3-6, and incorporates that fact section by reference. In what follows, the Court addresses recent developments in Gonzalez's compassionate release case and supplemental documentation and briefing filed by Gonzalez and Yates after the remand.

### a.  Gonzalez's Motion for Compassionate Release

After Gonzalez's sentencing court gave him an opportunity to refile objections, Gonzalez submitted a motion for order claiming FC-Low was no longer filling his Omeprazole prescription, and the court ordered the Government to show cause "as to why FCI Forrest City is not obligated

to continue providing defendant with his prescription medication." *See Gonzalez I*, Doc. 231. The Government responded that the court lacked jurisdiction both because it was a civil rights claim that can only be properly brought in the district of incarceration and Gonzalez had not exhausted his administrative remedies. *See Gonzalez I*, Doc. 232 at 6-8. On October 22, 2020, the court entered an order denying Gonzalez's motion for reconsideration as to the merits of his motion for compassionate relief. It found that Gonzalez presented no new facts or arguments to justify altering its previous order denying Gonzalez's motion. *See Gonzalez I*, Doc. 233 at 5.  In a separate order, the court found it did not have jurisdiction to address Gonzalez's Omeprazole claim since it was essentially a conditions of confinement claim which should be filed in another district and Gonzalez had not exhausted his administrative remedies. *See Gonzalez I*, Doc. 234 at 4. Gonzalez has now appealed the denial of his motion for compassionate release. *See Gonzalez I*, Doc. 241.

### b.   Supplemental Information in Support of Immediate Release

Since the remand, Gonzalez has submitted supplemental documents and briefing to his claim for immediate release. Since Gonzalez has already been infected with COVID-19, he now focuses on the risk of reinfection and the alleged lack of care for his previous infection. He states, "he has neither received, nor begun, treatment, care, or examination for his Coronavirus infection." *Doc.* 24 at 2. In a later supplement, he says "[s]till untreated, Gonzalez has suffered many months of pain, distress, and hardship," *Doc.* 42 at 2., and that "he continues to suffer headaches, shortness of breath chest pains, loss of taste and smell, and foggy concentration." *Id.* at 26. He also complains he cannot access medical care in general: "the prison continues to refuse to provide him with medical care to treat his chronic-care GERD condition and his Hyperthyroidism." *Doc.* 24 at 2. In support of these claims, Gonzalez has filed numerous email correspondences with prison officials and sick call requests regarding his lack of treatment for COVID-19, issues with his prescriptions,

and other complaints regarding conditions in the prison. *See Doc.* 13 at 26-53; *Doc.* 17 at 5-10; *Doc.* 24 at 16-18; *Doc.* 28 at 4-10. In these correspondences, Gonzalez claims he no longer receives Omeprazole free of charge from the pharmacy and must now buy the medication over the counter from the commissary. He also states that his Methimazole prescription was discontinued. Gonzalez connects these prescription issues with his attempt to seek treatment for COVID-19: "Despite his reasonable efforts to receive treatment, not only has the prison actively ignored him, but have [*sic*] made efforts to establish their vitriolic dominion over him by removing 2 of his necessary prescription medications-causing him additional, prolonged wanton suffering." *Doc.* 42 at 2.

Responding to Gonzalez's allegations surrounding COVID-19 treatment, Yates notes Gonzalez consistently denied experiencing any symptoms during his COVID-19 quarantine and the prison staff took his temperature each day for 14 days. *See Doc.* 18-6 at 36-37 (filed under seal). After he re-tested negative for COVID-19, Gonzalez had many clinical encounters at health services for other health issues. *See id.* at 1-12. (filed under seal). The notes from these encounters do not record Gonzalez raising any COVID-19 specific concerns. *See id.* In response to an email requesting follow-up COVID-19 treatment, health services told Gonzalez the following: "You were without symptoms at the time of your positive COVID test and were without complaints during your time in quarantine/isolation. No treatment is warranted if there are no symptoms." *Doc.* 42 at 45. They also said, "You were seen in clinic on 1/8/21 and 1/14/21. You reported no COVID-like symptoms at those visits. Per CDC and NIH guidelines, treatment is based on illness/disease severity. You reported no symptoms and were without symptoms at the time of your positive testing. Therefore, no treatment was warranted." *Id.* at 47. He had another visit at health services on February 23, 2021 in response to his sick call request. *Doc.* 37-2 at 127 (filed under seal). In those Clinical Encounter notes, Gonzalez's two chief complaints were increased

GERD symptoms and renewing his Methimazole prescription for his hyperthyroidism. *See id.* Since his thyroid condition was determined to be in remission, the doctor did not renew his Methimazole prescription. *See id.* Gonzalez described this clinic visit as a "last minute scramble to show this court Gonzalez has received medical care" where he "was called to health services and was provided several health checks, but none for Coronavirus." *Doc.* 42 at 20. However, the notes do not show that Gonzalez raised any COVID-19 specific concerns. *See Doc.* 37-2 at 127 (filed under seal).

In response to the Omeprazole issue, Yates notes that inmates are generally required to purchase OTC medications from the commissary unless they are indigent or have qualifying chronic conditions. *See Doc.* 37 at 14. Gonzalez's prescription was marked as "Chronic Care Verified" from 1/29/20 until 7/27/20. *See Doc.* 42 at 38. But upon review in June 2020, the prison determined he fell under the OTC Medication Policy since he did not have one of the qualifying conditions, s*ee Doc.* 37-1 at 12, and consistently maintained a trust fund balance well above the threshold for indigency. *See Doc.* 37-2 at 106 ("An inmate without funds is an inmate who has not had a trust fund account balance of $6.00 for the past 30 days."); *Doc.* 37-2 at 119-125 (Gonzalez's account balances from August 2020 to February 2021 range from $249.93 to $751.97). Receipts from his commissary visits show that he purchased Omeprazole six times between August 2020 and February 2021. *See id.* Gonzalez ultimately filed administrative grievances and appeals concerning his access to Omeprazole and was met with the same response: he did not qualify for the exception to the OTC medication policy because he did not have a qualifying condition and was not indigent. *See Doc.* 42 at 28-33.

c. **Status of COVID-19 in Forrest City Low**

Since Gonzalez's claim focuses on the risk of COVID-19 reinfection, Yates provided

updated numbers on the status of COVID-19 in FC-Low and the broader Forrest City FCC complex. A declaration from Tanisha Hall, an associate warden at Forrest City FCC, includes the following numbers as of March 8, 2021:

1. The fatality rate at FC-Low (including the SPC camp facility) was zero per 1000 inmates

2. The fatality rate at FC-Medium was 5.49 per 1000 inmates

3. There has only been one confirmed case of COVID-19 reinfection at FC-Low.

4. At least 713 inmates at the Forrest City FCC complex had received their first vaccine dose.

*See Doc.* 37-1 at 6-7.

On May 24, 2021, FC-Low reported zero positive inmates and one positive staff member. *See COVID-19 Cases*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited May 24, 2021)[3].  As of May 24, 1495 inmates and 215 staff members were fully inoculated (received the full complement of doses) in the Forrest City FCC complex. *See COVID-19 Vaccine Implementation*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited May 24, 2021).

To refute these numbers, Gonzalez states the following:

1. "The Respondent concedes that at least 2 COVID related inmate deaths have occurred at the FC-Medium facility. But, the reporting criterion is flawed and illusory. At least 2 prisoners at FCI-Low" contracted COVID-19 in the prison but later died offsite on home release or elsewhere. *Doc.* 42 at 11.

---

[3] The Court takes judicial notice of the Arkansas Sentencing Grid since it is available on a government website. *See Missourians for Fiscal Accountability v. Klahr*, 830 F.3d 789, 793 (8th Cir. 2016) (Approvingly citing Seventh Circuit precedent recognizing "the authority of a court to take judicial notice of government websites.").

2.   "The Respondent also concedes there has been only one recorded incidence of COVID reinfection at FCIFC Low. But, this conclusion is flawed on several fronts. The prison has not performed mass testing lately, if there has ever been any recent mass testing at all, and there is no evidence to support this conclusory claim… But, the respondent's report to the court does not include the reinfections of Kenneth McCloud (recently transferred), Daniel Hoss (verified 9/4/20), Mark Anderson #46987-044, Wesley Smith (recently transferred-symptomatic negative) and reinfection of custody officer Hadden." *Id.* at 12.

If these allegations were true, that would bring the total to two COVID-19 deaths and six instances of COVID-19 reinfection in FC-Low.

### III.   Legal Claims

Gonzalez seeks either temporary reassignment to home confinement for the duration of the pandemic or immediate release. *See Doc.* 1 at 5; *Doc.* 9 at 13. He seeks such relief under two potential avenues: the CARES Act and 28 U.S.C. § 2241. However, as discussed above, his supplemental briefing focus on his request for immediate release. Gonzalez combines the alleged issues with his prescriptions and lack of COVID-19 treatment with his prior complaints about FC-Low's response to COVID-19 to support his request for immediate release: "[s]imply providing Gonzalez with these medications, along with treatments and examinations for his COVID-19 infection will not cure these harms… Gonzalez requires intensive long-term therapy and rehabilitation that he will not receive in prison" *Doc.* 42 at 6.

### IV.   Home Confinement

To begin, this Court does not have jurisdiction to release Gonzalez to temporary home confinement under either the CARES Act or 28 U.S.C. § 2241.

### a.  Home Confinement Under the CARES Act

Gonzalez's first potential avenue for temporary home confinement is the CARES Act. In his petition, Gonzalez claims, "[t]hrough the CARES ACT, this court may order the BOP to secure Gonzalez under home-confinement until such time as this pandemic has abated." *Doc.* 1 at 4. On April 3, 2020, Former Attorney General William Barr exercised emergency authority under Section 12003(b)(2) of the CARES Act to expand the group of inmates who may be considered for home confinement in light of emergency conditions caused by the COVID-19 virus. *See* William P. Barr, Former Attorney General, Memorandum for Director of Bureau Prisons: Increasing Use of Home Confinement at Institutions Most Affected by COVID-19 (Apr. 3, 2020), https://www.bop.gov/coronavirus/docs/bop_memo_home_confinement_april3.pdf. However, the BOP has exclusive authority to determine the placement of inmates. *See* 18 U.S.C. § 3624(c)(2). As many courts have noted, the CARES Act widens the ability of the BOP to grant inmates home confinement, but it does not give federal courts jurisdiction to order alternative placements. *See United States v. Blaylock*, 2020 U.S. Dist. LEXIS 95002, at *9 (W.D. Ark. June 1, 2020) ("Nothing in section 3624, the FSA, or the CARES Act gives the Court the authority to order a prisoner's placement on home confinement."); *United States v. Walker*, 2020 U.S. Dist. LEXIS 85138, at *3, 2020 WL 2490101, at *2 (D. Minn. May 14, 2020) ("the BOP has exclusive authority to determine the placement of prisoners. *See* 18 U.S.C. § 3624(c)(2). Neither the CARES Act nor the FSA alters this authority.") *United States v. McCann*, 2020 U.S. Dist. LEXIS 67853, at *7, 2020 WL 1901089, at *3 (E.D. Ky. April 17, 2020) ("While the CARES Act gives the BOP broad discretion to expand the use of home confinement during the COVID-19 pandemic, the Court has no authority under this provision to order that a prisoner be placed on home confinement."). Thus, this Court does not have jurisdiction to alter Gonzalez's

confinement under the CARES Act.

### b.   Home Confinement Under 28 U.S.C. § 2241

Gonzalez's second potential avenue for temporary release to home confinement is through 28 U.S.C. § 2241. Relief through a writ of habeas corpus may be granted if the petitioner can show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). In order to satisfy this requirement, Gonzalez alleges an Eighth Amendment violation. *See Doc.* 9 at 6-12.

### i.   Home Confinement in the First Instance

Since temporary home confinement would not result in an earlier completion of Gonzalez's sentence, this Court does not have subject matter jurisdiction to grant this relief in the first instance in a section 2241 petition. *See Kruger v. Erickson*, 77 F.3d 1071, 1073 (8th Cir. 1996). A section 2241 petition attacks the fact or duration of an inmate's confinement and seeks either immediate release or a shortened period of confinement. *See Portley-El v. Brill*, 288 F.3d 1063, 1066 (8th Cir. 2002). In the Eighth Circuit, "[i]f the prisoner is not challenging the validity of his conviction or the length of his detention, such as loss of good time, then a writ of habeas corpus is not the proper remedy." *Kruger*, 77 F.3d at 1073. Nationwide, there is no uniformity in the applicability of section 2241 because "the Supreme Court's *Preiser* decision left open 'the question of the propriety of using a writ of habeas corpus to obtain review of the conditions of confinement, as distinct from the fact or length of the confinement.'" *Spencer v. Haynes*, 774 F.3d 467, 470 (8th Cir. 2014) (citing *Bell v. Wolfish*, 441 U.S. 520, 526 n.6 (1979)). As a result, the "D.C. Circuit, the Second Circuit, the Third Circuit, the Fourth Circuit, and the Sixth Circuit firmly stand in the camp of allowing conditions-of-confinement claims to be brought in the habeas corpus context." *Id.* at 470 n.6. In one widely cited Second Circuit case, that court stated, "[a] motion pursuant to §

2241 generally challenges the *execution* of a federal prisoner's sentence, including such matters as the administration of parole, computation of a prisoner's sentence by prison officials, prison disciplinary actions, prison transfers, type of detention and prison conditions." *Jiminian v. Nash*, 245 F.3d 144, 146 (2d. Cir. 2001) (emphasis in original). Making note of these alternative applications, the Eighth Circuit reiterated in *Spencer* that it was bound by its post-*Preiser* precedent and continued to limit section 2241 petitions to those that would result in an earlier release from prison. *See Spencer*, 774 F.3d at 470 (citing *Kruger*, 77 F.3d at 1073). A section 2241 petition is not the proper vehicle here because temporary release to home confinement for the duration of the pandemic would alter the type but not the length of Gonzalez's imprisonment. *See Kruger*, 77 F.3d at 1073. While other circuits have concluded that section 2241 petitions can challenge where or how a sentence is served,[4] the Eighth Circuit has not. Therefore, this Court does not have jurisdiction to grant Gonzalez temporary release from FC-Low under section 2241.

### ii.   Review of the BOP's Placement Decision

While Gonzalez cannot seek temporary release to home confinement under section 2241 in the first instance, habeas jurisdiction may be available for a petitioner who has completely exhausted administrative remedies within the BOP. However, Gonzalez does not contend that the BOP unconstitutionally denied his request for transfer to home confinement. Gonzalez requested home confinement on April 2, 2020, but his request was denied because he was convicted of a sex offense. *See Gonzalez I*, Doc. 206-1 at 2. Per Former Attorney General William Barr's March 26, 2020 memo, inmates convicted of sex offenses were categorically ineligible for release to home

---

[4] Some courts in other circuits have approached petitions seeking temporary home confinement due to COVID-19 as section 2241 petitions. *See e.g.*, *United States v. Berry*, No. CR 1:18-430, 2020 WL 1984117, at *4 (M.D. Pa. Apr. 27, 2020) ("I agree with my colleague's well reasoned analysis and join in their conclusion that 28 U.S.C § 2241 is the proper vehicle to proceed. Therefore, the court finds that Berry's motion should be construed as a § 2241 habeas petition since she seeks relief affecting how her sentence is executed, i.e., serving her sentence in home confinement as opposed to confinement in prison to which she was sentenced, and not a reduction or release from her sentence (i.e. a compassionate release.") (collecting cases).

detention. ("Some offenses, such as sex offenses, will render an inmate ineligible for home detention.") *See* William P. Barr, Former Attorney General, Memorandum for Director of Bureau Prisons: Prioritization of Home Confinement As Appropriate in Response to COVID-19 Pandemic (Mar. 26, 2020), https://www.bop.gov/coronavirus/docs/bop_memo_home_confinement.pdf.

Even assuming Gonzalez has exhausted his administrative remedies, it is not clear if the BOP's final transfer decision would even be reviewable by this Court. *See Nichols v. Hendrix*, No. 2:20-CV-00109-LPR-JTR, 2020 U.S. Dist. LEXIS 161729, at *5, 2020 WL 5201226 (E.D. Ark. June 12, 2020) (discussing the First Step Act and the applicability of habeas jurisdictions in requests for home confinement). In *Porche v. Salazar*, 2019 U.S. Dist. LEXIS 51839, 2019 WL 1373683, *1 (D. Ore. March 5, 2019), that court found the BOP's denial of petitioner's transfer request unreviewable based on language in the First Step Act of 2018 specifying that BOP's "'designation of a place of imprisonment . . . is not reviewable by any court.'" *Id.* (*quoting* § 3621(b)). Prior to the addition of that language, the Eighth Circuit held that challenges to the denial of transfer requests must show that the warden did not act in good faith in denying the request. *See Miller v. Whitehead*, 527 F.3d 752, 758 (8th Cir. 2008) ("We see no evidence that the warden acted other than in good faith when he concluded that immediate RRC placement was not appropriate."). Thus, even assuming Gonzalez had raised this claim and presented evidence that he has exhausted administrative remedies, he would either still be barred from raising this claim or be required to show that the denial of his request was other than in good faith. In this case, he has not shown the officials acted in other than good faith since they merely followed the policy set forth in Barr's memorandum. *See Miller v. Whitehead*, 527 F.3d at 758. Accordingly, Gonzalez also cannot establish that BOP unconstitutionally denied his request for temporary release to home confinement.

V.      **Immediate Release Under 28 U.S.C. § 2241**

Gonzalez also makes a claim for immediate release. While he states in his original petition

that "[he] is not necessarily seeking release," *Doc.* 1 at 4, he states the following in his reply:

> since imprisonment under these current conditions no longer coincides with the
> traditional standards of incarceration, that being free from constant exposure to a
> lethal hazard for which there is no cure, the court must now determine whether
> these new conditions are acceptable, violative of the ex post facto doctrine, or
> warrant some form of equitable relief.

*Doc.* 9 at 13. In supplemental briefing, he says, "[s]imply providing Gonzalez with these

medications, along with treatments and examinations for his COVID-19 infection will not cure

these harms… Gonzalez requires intensive long-term therapy and rehabilitation that he will not

receive in prison." *Doc.* 42 at 6.

The Court construes this as a claim for immediate release under section 2241 due to

unconstitutional conditions of confinement. Since this form of relief could shorten Gonzalez's

prison sentence, it could be cognizable under Eighth Circuit law. *See Spencer*, 774 F.3d at 470.

*Spencer* is distinguishable from Gonzalez's claim for immediate release due to COVID-19. *See*

774 F.3d at 470-71 (citing *Kruger*, 77 F.3d at 1073). In that case, petitioner was challenging a

prison official's decision to place him in four-point restraints. *See id.* at 469.  Since he was neither

challenging his conviction nor seeking earlier release from prison, the Eighth Circuit found that a

2241 petition was not the proper vehicle for his claim. *See id.* The court then opined that his petition

would be properly brought as a *Bivens* claim. *See id.* at 471.

In this case, immediate release is not a remedy allowed under a *Bivens* action, *see Preiser*,

411 U.S. at 500, and immediate release would shorten his prison sentence, so Gonzalez's claim

could be properly brought in a 2241 petition. *See Spencer*, 774 F.3d at 470. One court in this circuit

followed this reasoning in finding that section 2241 relief is available when immigrant detainee

petitioners sought immediate release and claimed that no conditions of confinement would remedy the alleged constitutional violations. *See Mohammed S. v. Tritten*, No. 20-cv-793 (NEB/ECW), 2020 U.S. Dist. LEXIS 84829, at \*59 (D. Minn. Apr. 28, 2020).

On the other hand, Yates cites to a court in this Circuit that found section 2241 relief unavailable for petitioners who raise conditions of confinement claims and seek immediate release. *See Malcom v. Starr*, No. 20-2503 (MJD/LIB), 2021 U.S. Dist. LEXIS 45387, at \*8, 2021 WL 931213 (D. Minn. Mar. 11, 2021) (holding that petitioners' claims for release based on COVID-19 conditions in FCI Waseca can only properly be brought in a civil rights action). Others in this circuit have also found section 2241 relief unavailable in this context. *See Allie v. Hendrix*, No. 2:20-CV-00211-LPR-JTR, 2020 U.S. Dist. LEXIS 240394, at \*4, 2020 WL 7586556 (E.D. Ark. Nov. 10, 2020) (holding that a petitioner cannot use a habeas action to seek immediate release due to COVID-19 conditions in FCC Forrest City); *Deardorff v. Hendrix*, No. 2:20-cv-00237-DPM-JJV, 2021 U.S. Dist. LEXIS 57489, at \*5, 2021 WL 1112769 (E.D. Ark. Jan. 25, 2021) (same).

This Court need not decide whether Gonzalez can bring his habeas claim for immediate release under the Eighth Amendment in the first place because assuming without deciding that he could, he fails to meet the objective prong.

### a.   Eighth Amendment Claim of Unsafe Conditions

Gonzalez brings his habeas claim under the Eighth Amendment, which "requires that inmates be furnished with the basic human needs, one of which is 'reasonable safety,'" and it is "cruel and unusual punishment to hold convicted criminals in unsafe conditions." *Helling v. McKinney*, 509 U.S. 25, 33 (1993) (citations omitted). Courts analyze Eighth Amendment claims of unsafe conditions through a two-pronged inquiry. *See id.* at 35-37. Under the objective prong, the inmate must present a "scientific and statistical inquiry into the seriousness of the potential

14

harm and the likelihood that such injury to health will actually be caused by [the unsafe condition]" and also show that "society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk." *Id.* at 36. The subjective prong "requires an inquiry into the prison officials' state of mind" based on the "deliberate indifference" standard. *Id.* at 32. "To show deliberate indifference, the prisoner/detainee must prove both that the official's acts objectively caused a sufficiently serious deprivation and that the official had a subjectively culpable state of mind." *Perkins v. Grimes*, 161 F.3d 1127, 1130 (8th Cir. 1998) (citation omitted).

Where inmates challenge their conditions of confinement in section 1983 or *Bivens* litigation, they seek both damages and injunctions to make those conditions constitutional. Since Gonzalez seeks immediate release and not a change in the conditions of his confinement, he would likely have to meet a higher standard that *no* conditions of confinement in FC-Low would be constitutional for him. *See Malam v. Adducci*, No. 20-10829, 2020 U.S. Dist. LEXIS 59407, at *6 (E.D. Mich. Apr. 5, 2020) ("Petitioner may nonetheless bring her claim under 28 U.S.C. § 2241 because she seeks immediate release from confinement as a result of there being no conditions of confinement sufficient to prevent irreparable constitutional injury under the facts of her case."). Gonzalez's claim does not meet either standard.

### i. Objective Prong

In order to meet the objective prong, Gonzalez must show that he himself is being exposed to an unreasonably dangerous situation where he is likely to either contract COVID-19 or experience COVID-19 complications and that this exposure is so grave that it violates contemporary standards of decency. *See Helling*, 509 U.S. at 35-36. Gonzalez contracted COVID-19 in May 2020 after he filed this petition. *See Gonzalez I*, Doc. 216-1 at 4. Therefore, Gonzalez

must present a "scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that [COVID-19 reinfection or COVID-19 complications] will actually be caused by [the conditions at FC-Low]." *Helling*, 509 U.S. at 36. The Bureau of Prisons Health Services records say Gonzalez routinely denied having any symptoms of COVID-19 such as cough, shortness of breath, muscle pain, fatigue, sore throat, headache, loss of taste or smell, and the chills. *See Gonzalez I*, Doc. 216-1 at 5-6. Gonzalez counters that these entries are inaccurate since he suffered "confusion, shortness of breath, muscle aches, and dizziness." *Gonzalez I*, Doc. 220-2 at 3. In any case, Gonzalez subsequently tested negative on June 23, 2020. *See Gonzalez I*, Doc. 216-1 at 8. Gonzalez presents numerous emails he sent to the prison healthcare system in order to receive treatment for his prior infection. Gonzalez also claims "he continues to suffer headaches, shortness of breath chest pains, loss of taste and smell, and foggy concentration," *Doc.* 42 at 26, but he did not raise any COVID-19 concerns in his three most recent visits to Health Services. *Doc.* 42 at 47; *Doc.* 37-2 at 127 (filed under seal).

As to the prospect of reinfection, there has been only one confirmed case of COVID-19 reinfection at FC-Low. *See Doc.* 37-1 at 6. Gonzalez claims there were five additional instances not recorded by the BOP. *Doc.* 42 at 12. Even assuming Gonzalez's numbers are true, that amounts to six instances of reinfection. As of May 24, 2021, there are no cases of COVID-19 amongst inmates. *See COVID-19 Cases*, FEDERAL BUREAU OF PRISONS. The number of inmates fully inoculated in the entire Forrest City FCC complex is now 1495. *See COVID-19 Vaccine Implementation*, FEDERAL BUREAU OF PRISONS.

Given these current numbers of COVID-19 infections and vaccinations, the possibility of Gonzalez being reinfected with COVID-19 is unlikely and falls far below the threshold necessary to meet the objective prong of the Eighth Amendment inquiry. Likewise, while he reports lingering

COVID-19 symptoms here, he did not report any during his clinical encounters. Gonzalez has received medical treatment for other ailments, and health services has stated it would treat him for COVID-19 if he were experiencing symptoms. Given the health care that is available to him, the Court cannot conclude that he faces a serious risk of unreasonable complications from his prior infection or that his exposure to this risk in FC-Low is so grave that it violates contemporary standards of decency. *See Helling*, 509 U.S. at 36. Since Gonzalez has not presented sufficient evidence that he is being exposed to a substantial risk of COVID-19 reinfection or unreasonable complications from his previous infection or that such exposure violates contemporary standards of decency, the Court recommends his petition be dismissed with prejudice. *See id.*

## VI.    Enlargement

In his supplemental briefing, Gonzalez requests the remedy of enlargement, or habeas bail while his petition is pending. *See Doc.* 21 at 4-5.  Since this Court recommends the dismissal of his petition, it also recommends this request be denied as moot.

## VII.    Conclusion

IT IS THEREFORE RECOMMENDED that:

1) Petitioner Gabriel Gonzalez's Petition for Writ of Habeas Corpus (*Doc.* 1) be DISMISSED WITH PREJUDICE.

2) A Certificate of Appealability be DENIED. *See* 28 U.S.C. § 2253(c)(1)-(2); Rule 11(a), Rules Governing § 2254 Cases in United States District Courts.

IT IS SO RECOMMENDED this 25th day of May, 2021.

_____
JEROME T. KEARNEY
UNITED STATES MAGISTRATE JUDGE